

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

April 30, 1952

Hon. Leonard King
County Attorney
Childress County
Childress, Texas

Opinion No. V-1448

Re: Authority of the commis-
sioners' court to order
an election to determine
if an ad valorem tax
should be levied for
farm-to-market and lat-
eral roads, to be held
in conjunction with the
party primary election
in July, using the same
election judges and
clerks.

Dear Sir:

     Reference is made to your request for
the opinion of this office concerning the author-
ity of the commissioners' court to order an elec-
tion to determine if an ad valorem tax should be
levied for farm-to-market and lateral roads, to be
held in conjunction with the party primary elec-
tion in July, using the same election judges and
clerks.

     The pertinent part of Section 7 of Arti-
cle 7048a, V.C.S., relative to calling and holding
an election for the purpose of levying a tax for
farm-to-market and lateral road purposes provides:

     "Before any county shall levy, assess
and collect the tax provided for herein the
question shall by the Commissioners Court
of the county be submitted to a vote of
the qualified property taxpaying voters
of such county at an election called for
that purpose, either on said Commissioners
Court's own motion, or upon petition of
ten per cent (10%) of the qualified prop-
erty taxpaying voters of said county as
shown by the returns of the last general
election. <u>Said election shall be ordered
at a regular session of said Commissioners
Court and such order shall specify the</u>

rate of tax to be voted on, not to exceed thirty cents. (30¢) on each One Hundred Dollars ($100) valuation of taxable property within such county, shall state the date when said election shall be held, and shall appoint officers to hold said election in accordance with the election laws of this State." (Emphasis added throughout.)

Since this is a special election and is held in accordance with the election laws, we must look to the Texas Election Code (H.B. 6, Acts 52nd Leg., R.S. 1951, ch. 492, p. 1097) to determine which provisions of the election laws are applicable to this type of election.

Section 15 of the Election Code provides in part:

"The Commissioners Court at the February term shall appoint from among the citizens of each voting precinct in which there are less than one hundred (100) voters who have paid their poll tax or received their certificates of exemption, two (2) reputable qualified voters as judges of the election, selected from different political parties, if practicable, who shall continue to act until their successors are appointed. . . . One of the judges who shall, in all cases belong to the party that at the last general election cast the largest vote for Governor throughout the State shall be designated as the presiding judge at elections; he shall appoint two (2) competent and reputable qualified voters of different political parties if practicable, to act as clerks of the election.   . . ."

Section 16 of the Election Code provides in part:

"For every precinct in which there are one hundred (100) citizens or more who have paid their poll tax or received their certificates of exemption, the Commissioners Court shall appoint four (4) judges of election, who shall be chosen when practicable from opposing political parties,

one of whom shall be designated as presiding judge. . . . The presiding judge shall appoint four (4) competent and reputable clerks, and as many other clerks as may be authorized by the Commissioners Court, who have paid their poll tax, or have secured their exemptions, and of different political parties, when practicable; . . . Provided, that in all elections held under the provisions of this title, other than general elections, local option elections and primary elections, the officers to be appointed by the Commissioners Court to hold said elections shall be a presiding judge, and assistant judge and two (2) clerks, whose compensation shall be Five Dollars ($5) per day, and Two Dollars ($2) extra to the presiding judge for making return of the election."

Section 22 of the Election Code provides:

"The pay of judges and clerks of general and special elections shall be determined by the Commissioners Court of the county where such services are rendered, and in primary elections by the County Executive Committee of the party conducting such primary election, but same shall not exceed Ten Dollars ($10) a day for each judge or clerk, nor exceed One Dollar ($1) per hour each for any time in excess of a day's work as herein defined. The judge who delivers the returns of election immediately after the votes have been counted shall be paid Two Dollars ($2) for that service; provided, also, he shall make returns of all election supplies not used when he makes returns of the election. Ten (10) working hours shall be considered a day within the meaning of this Article. The compensation of judges and clerks of general and special elections shall be paid by the County Treasurer of the county where such services are rendered upon order of the Commissioners."

Section 77 of the Election Code provides:

"All expenses incurred in furnishing

the supplies, ballots, and booths in any
general or special election shall be paid
for by the county, except costs in munici-
pal and school elections.  All accounts for
supplies furnished and services rendered
shall first be approved by the Commissioners
Court before they are paid by the county."

The pertinent provisions of the Election
Code relative to the "primary election" are as follows:

Sec. 179 - "The term 'primary election,'
as used in this chapter, means an election
held by the members of an organized political
party for the purpose of nominating the candi-
dates of such party to be voted for at a
general or special election, or to nominate
the county executive officers of a party."

Sec. 183 - "All the precinct primary
elections of a party shall be conducted by
a presiding judge, to be appointed by a
chairman of the county executive committee
of the party, with the assistance and ap-
proval of at least a majority of the mem-
bers of the county executive committee.
Such presiding judge shall select an as-
sociate judge and a clerk to assist in
conducting the election; additional clerks
may be appointed under such rules as may
be made by the county executive committee.
. . ."

Sec. 186 - "Prior to the assessment
of the candidates, on the third Monday in
June preceding each general primary, the
county committee shall also carefully es-
timate the cost of printing the official
ballots, renting polling places where same
may be found necessary, providing and dis-
tributing all necessary poll books, blank
stationery and voting booths required,
compensation of election officers and
clerks and messengers, to report the result
in such precinct to the county chairman, as
provided for herein, and all other necessary
expenses of holding such primaries in such
counties and shall apportion such cost among
the various candidates for nomination for

district, county and precinct offices only as herein defined, and offices to be filled by the voters of such district, county or precinct only, in such manner as in their judgment is just and equitable; . . ."

An analysis of the above statutes relative to "farm-to-market elections" and "primary elections" reveals:

1. It is mandatory that the commissioners' court appoint only four persons to hold the "farm-to-market election" in each election precinct, whereas the county chairman of the political party, with the assistance of a majority of the county executive committee, appoints a presiding judge of each election precinct, and the presiding judge appoints an associate judge and clerk to assist him. However, an indeterminate number of persons may be appointed to hold each precinct primary election if it is so determined by the county executive committee.

2. The four persons appointed to hold the "farm-to-market election" shall be chosen where practicable from opposing political parties; contrarily, however, the three persons or more appointed to hold the "primary election" are chosen from the same political party.

3. The judges and clerks of each election precinct in the "farm-to-market election" are paid by the county, but the judges and clerks of the "Primary election" are paid by the county chairman out of the funds derived through the assessments paid by the candidates of the party holding the primary election.

4. All other expenses of holding the "farm-to-market election" are paid for by the county, whereas similar expenses for holding the "primary election" are paid by the county chairman out of the funds collected from the candidates.

This office passed on a similar question in Attorney General's Opinion O-2539 (1940), from which we quote as follows:

". . . However, we are of the opinion that Article 666-33, supra, is an express

provision of the statutes requiring the
commissioners' court to appoint officers
to hold local option elections as now re-
quired to hold general elections, and in
appointing or attempting to appoint the
election officials designated to hold pri-
mary elections would not be in compliance
with the express provisions of the above
mentioned statute.

"In view of the foregoing, you are
respectfully advised that it is the opin-
ion of this department that the commis-
sioners' court does not have the legal
authority to appoint as judges of a local
option election the same judges as those
appointed by the County Democratic Commit-
tee to hold the Democratic Primary Elec-
tion. In the event the same election
judges, etc. holding the primary election
were to hold the local option election at
the same time, there would be no saving of
expenses, for the county must pay the expens-
es of holding the local option election,
and candidates, through the county chair-
man, pay the expenses of the primary elec-
tion and the county could not legally avoid
the payment of the expenses of holding the
local option election by attempting to have
the election officials of the primary elec-
tion to hold the local option election along
with the primary election, the expense of
such being paid by the candidates in the
primary election."

In view of the foregoing, it is our opin-
ion that the commissioners' court does not have au-
thority to order that the election judges and clerks
conducting a party primary election also conduct at
the same time an election to determine if an ad valorem
tax should be levied for farm-to-market and lateral
roads.

## SUMMARY

A commissioners' court does not have authority to order that the election judges and clerks conducting a primary election also conduct at the same time an election to determine if an ad valorem tax should be levied for farm-to-market and lateral roads.

Yours very truly,

APPROVED:

Mary K, Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

JCD:mh

PRICE DANIEL
Attorney General

By J. C. Davis, Jr.
J. C. Davis, Jr.
Assistant